Timothy O. BROWN, Appellant,

v.

ATLANTA CASUALTY COMPANY,
Appellee.

No. 92–CA–2626–S.

Court of Appeals of Kentucky.

Feb. 25, 1994.

J. Warren Bruenderman, Louisville, for appellant.

Wayne J. Carroll, Edward H. Bartenstein and Lee Ann Risner, MacKenzie & Peden, P.S.C., Louisville, for appellee.

Before JOHNSON, MILLER and WILHOIT, JJ.

JOHNSON, Judge:

This appeal follows the entry of summary judgment by the Jefferson Circuit Court on cross-motions for summary judgment. The parties agree that this case presents questions of law, and there are no disputed issues of material fact. We affirm the trial court's summary judgment.

On May 21, 1990, the appellant, Timothy Brown (Brown), was driving a 1984 Chevette purchased with his own funds and registered in Kentucky in his name. Brown collided into a telephone pole and sustained a sprained right ankle and cuts on his face. Brown testified in his deposition that he had not purchased insurance on the vehicle because he could not afford it. Brown was eighteen-years old at the time of the accident and resided in the same household with his father, Ronald Brown. Following the accident, Brown filed a claim for basic reparations benefits (BRBs) with the appellee, Atlanta Casualty Company (Atlanta Casualty), which had issued an automobile insurance policy to Ronald Brown.

On January 29, 1992, Atlanta Casualty filed a complaint in Jefferson Circuit Court for a declaratory judgment to the effect that it did not owe Brown BRBs. On March 4, 1992, Brown responded to the complaint and filed a counterclaim stating that he resided with his father at the time of the accident and that as a member of his father's household he was entitled to BRBs for all medical expenses and lost wages resulting from the

accident. The issues were submitted to the trial court on cross-motions for summary judgment. The trial court concluded that Atlanta Casualty did not owe BRBs to Brown as a matter of law. This appeal followed, and we affirm.

Brown bases his claim to BRBs on KRS 304.39–020(3)(b) and KRS 304.39–050(2) which read as follows:

KRS 304.39.020(3) "Basic reparation insured" means:

(b) While residing in the same household with a named insured, the following persons not identified by name as an insured in any other contract of basic reparation insurance complying with this subtitle: a spouse or other relative of named insured; and a minor in the custody of a named insured or of a relative residing in the same household with the named insured if he usually makes his home in the same family unit, even though he temporarily lives elsewhere.

KRS 304.39–050(2)

If there is no security covering the vehicle, any contract of basic reparation insurance under which the injured person is a basic reparation insured shall apply.

■ Atlanta Casualty argues that Brown is not entitled to the BRBs because of the following exclusion of BRBs contained in the policy issued to Brown's father:

EXCLUSIONS—This coverage does not apply:

(b) to bodily injury sustained by any relative while occupying any motor vehicle owned by such relative with respect to the security required by Kentucky Revised Statutes Chapter 304, subtitle 39, is not in effect.

We hold that the exclusion is valid as a matter of law. Kentucky's Motor Vehicle Reparations Act (Subtitle 39) (Act) was designed:

To require owners, registrants and operators of motor vehicles in the Commonwealth to procure insurance covering basic reparation benefits and legal liability aris-

ing out of ownership, operation or use of such motor vehicles.

KRS 304.39–010(1).

A more clear and emphatic expression of public policy cannot be imagined. The purpose thus expressed was effectuated by KRS 304.39–080(5) which provides:

[E]very owner of a motor vehicle registered in this Commonwealth or operated in this Commonwealth by him or with his permission, shall continuously provide with respect to the motor vehicle while it is either present or registered in this Commonwealth, and any other person may provide with respect to any motor vehicle, by a contract of insurance or by qualifying as a self-insurer, security for the payment of basic reparation benefits in accordance with this subtitle and security for payment of tort liabilities, arising from maintenance or use of the motor vehicle.

Appellant's interpretation of KRS 304.39–020(3)(b) together with KRS 304.39–050(2) would allow uninsured motorists driving their own uninsured vehicles to recover BRBs and thereby circumvent the very purpose of the Act. The public policy behind the Act is to require insurance, and to that end uninsured motorists are not given the same protection as insured motorists.

Clearly, the Act does not contemplate recovery of basic reparations benefits for uninsured motorists such as Brown. KRS 304.-39–160(4) provides as follows:

(4) A person who sustains injury while occupying a motor vehicle owned by such person and with respect to which security is required by the provisions on security and who fails to have such security in effect at the time of an accident in this Commonwealth causing such injury, *shall not obtain through the assigned claims plan basic reparation benefits,* including benefits otherwise due him as a survivor, unless such person's failure to have such security in effect at the time of such accident was solely occasioned by the failure of the reparation obligor of such person to provide the basic reparation benefits required by this subtitle. (emphasis added).

■ Even if Atlanta Casualty's exclusion were invalid and it were required to pay

Brown's claim, it would have subrogation rights back against Brown. KRS 304.39–310(2) provides that:

> An owner or registrant of a motor vehicle with respect to which security is required under KRS 304.39–110, who fails to have such security when the motor vehicle is involved in an accident *shall have all the rights and obligations of a reparation obligor,* and any other reparation obligor which has paid or may become obligated to pay basic or added reparation benefits to an injured person under a basic or added reparation contract or under the terms of the assigned claims plan *shall be subrogated* to the rights of the injured person against such owner or registrant. (emphasis added).

KRS 304.39–050(1) further provides that:

> [T]he injured person shall be entitled to payment under any contract of basic reparation insurance under which he is a basic reparation insured and the insurer making such payments shall be entitled to full reimbursement from the reparation obligor providing the security covering the vehicle.

If Brown were deemed to be an insured under his father's policy, Brown himself would be primarily liable for his own damages since KRS 304.39–310(2) makes him the basic reparation obligor on his own vehicle. Atlanta Casualty's liability would be secondary. This circular liability is absurd, and we will not interpret the statutes in a manner that would produce such a result. *See Winebrenner v. Dorten,* Ky., 825 S.W.2d 836, 837 (1992).

While Brown is correct that there is no Kentucky case on all fours,[1] the public policy clearly set forth in the Act itself requires denial of coverage to him. Accordingly, we affirm.

All concur.

---

[1]. However, appellee is correct that there is dicta supporting its position. *Gussler v. Damron,* Ky. App., 599 S.W.2d 775, 778 (1980), for example, stated that an "uninsured motorist who does not reject the tort limitation provisions of the Act ... is precluded from receiving basic reparations benefits." *See also Stone v. Montgomery,* Ky. App., 618 S.W.2d 595 (1981), and *Probus v. Sirles,* Ky.App., 569 S.W.2d 707 (1978).